**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Sarahi A.,**

**Plaintiff,**

**-against-**

**Commissioner of Social Security,**

**Defendant.**

**1:25-cv-10716 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Sarahi A. ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") that denied Plaintiff's application for Supplemental Security Income ("SSI").[1] (Compl., ECF No. 1.) Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner and remand this action for further administrative proceedings. (Pl.'s Mot., ECF No. 12.[2])

For the reasons set forth below, Plaintiff's motion is DENIED, and the Commissioner's decision is AFFIRMED.

[1] SSI requires only financial need, not that a claimant be insured for benefits. *See* 20 C.F.R. § 416.202. However, the provisions of the Act governing SSI and Disability Insurance Benefits ("DIB") use the same standards to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Thus, cases addressing disability as to one form of benefits are equally instructive as to the other. *See Santoro v. Comm'r of Soc. Sec.*, 703 F. Supp. 3d 376, 384 (E.D.N.Y. Nov. 27, 2023).

[2] The document filed by Plaintiff on the ECF docket is denominated as Plaintiff's motion for judgment on the pleading. (*See* ECF No. 12 text entry.) The document actually filed, however, is Plaintiff's Brief. Citations to the pages of text from this document will be made using the prefix "Pl.'s Mot." followed by the page number of the text.

## BACKGROUND

### I. Procedural Background

Plaintiff filed an application for SSI on December 6, 2021, with an alleged onset date of October 10, 2015. (R. 78, 87, 269.)[3] The Social Security Administration ("SSA") denied Plaintiff's application on December 14, 2021 (R. 108), and on August 31, 2022, after reconsideration. (R. 127.) On September 13, 2022, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Pl.'s Mot. at 1.) An administrative hearing was held on January 26, 2023 before ALJ Ifeoma Iwuamadi, during which Plaintiff was represented by counsel. (R. 32-50.) In a decision dated May 22, 2023, ALJ Iwuamadi found Plaintiff not disabled. (R. 91-98.)

Thereafter, Plaintiff requested review of the ALJ's decision from the Appeals Council. (R. 202-05.) The Appeals Council granted Plaintiff's request and remanded her case for a new hearing and decision on February 22, 2024. (R. 102-07.) The Appeals Council directed the ALJ to further evaluate Plaintiff's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms, including whether the lack of more extensive treatment was due to cost. (R. 104-05.)

ALJ Iwuamadi held a new hearing on September 4, 2024. (R. 51-68.) In a decision dated November 21, 2024, ALJ Iwuamadi again found Plaintiff not disabled. (R. 19-27.) Plaintiff again requested review of the ALJ's decision from the Appeals Council (R. 267-68), which denied her request for review on October 14, 2025. (R. 5-7.) Therefore, ALJ Iwuamadi's September 4, 2024 decision is the Commissioner's final decision. *See* 20 C.F.R. § 404.984. This action followed.

---

[3] Citations to the Administrative Record, which is filed at ECF No. 9, will be made using the prefix "R" followed by the page number from the record.

## II. Non-Medical Evidence

Born on July 17, 1992, Plaintiff was 23 years old on the alleged onset date of October 10, 2015, and was 32 years old at the time of the ALJ's September 4, 2024 decision. (R. 269, 361.) Plaintiff obtained an associate's degree in 2013. (R. 37.) Plaintiff lives with her two children, a son and a daughter, as well as her mother. (R. 37.) Plaintiff has no past relevant work. (R. 25.)

## III. Medical Evidence Before the ALJ

The Court adopts the summary of the medical records set forth by Plaintiff (*see* Pl.'s Mot. at 2-3), which the Commissioner does not contest (*see generally*, Comm'r Br., ECF No. 14), and summarizes herein the medical evidence to the extent necessary to address Plaintiff's arguments. (*See infra*, Discussion Section.)

On January 13, 2020, Plaintiff visited Dr. Anna Boyman at Mount Sinai Morningside Hospital for a follow-up after she had visited the emergency room ("ER") a month earlier. (R. 406.) At that earlier ER visit, Plaintiff had complained that her left eye was bothering her after she had gotten eyelash extensions. (*Id.*) She was prescribed Valtrex[4] and antibiotic eyedrops, but reported they had not been helping her condition. (*Id.*) She reported eye irritation, but no eye pain or vision problems. (*Id.*) Dr. Boyman administered a standard Snellen[5] test, and found Plaintiff had 20/20 vision in both her left and right eyes. (*Id.*) Slit lamp[6] and Fundus[7] exams also

---

[4] Valtrex is a "preparation of valacyclovir hydrochloride," which is "used as an antiviral agent in the treatment of genital herpes and herpes zoster in immunocompetent adults" *Dorland's Illustrated Medical Dictionary* at 1990 (33d ed. 2020).

[5] The Snellen test is an ophthalmological test for "visual acuity." *Dorland's* at 1870.

[6] A slit-lamp exam uses "a lamp having a diaphragm with a slit like opening through which a narrow flat beam of intense light may be projected into the eye." *Dorland's* at 990.

[7] A Fundus exam is the "examination of the interior of the eye with an ophthalmoscope." *See Dorland's* at 1311.

were administered, with normal results (R. 406-07.) Dr. Boyman concluded that the inflammatory reaction was due to old scars caused by the herpes simplex virus ("HSV"), and prescribed prednisolone acetate eyedrops and tobramycin-dexamethasone ointment. (R. 407.)

On October 26, 2021, Plaintiff saw Dr. Trisha Mor at Mount Sinai Morningside, with reports of recurrent photophobia, eye pain with any eye movements, and redness once a year when it gets cold. (R. 398.) Dr. Mor noted that Plaintiff had last been seen in January 2020 with episcleritis[8] and identified Plaintiff's condition as keratitis,[9] likely a result of HSV. (*Id.*) Dr. Mor conducted a base eye exam for visual acuity and found that Plaintiff had 20/30 vision in both eyes. (*Id.*) Results from Slit Lamp and Fundus exams were normal. (*Id.*) Dr. Mor assessed scleritis and episcleritis of the right eye, likely recurrent with corneal changes. (R. 399.) Dr. Mor also prescribed prednisolone acetate drops and noted that Plaintiff should follow up for a cornea evaluation and bloodwork. (R. 400.)

On November 28, 2021, Plaintiff was examined by Dr. Raffaele Milizia at St. John's Riverside Hospital, in response to complaints of right eye pain, redness and tearing. (R. 391.) Plaintiff reported that she had experienced recurring discomfort in her right eye, had been seen by multiple ophthalmologists and had been prescribed topical steroids. (*Id.*) According to Plaintiff, her bloodwork had returned as normal and she had been given no clear diagnosis. (*Id.*) She reported that the medication had at first relieved her symptoms but eventually had stopped working. (*Id.*) Plaintiff reported that her current episode, which began a month prior, had left her

[8] Episcleritis is an "inflammation of the episclera," which is the "loose connective tissue forming the external surface of the sclera," "and adjacent tissues." "Visual acuity is usually normal." *Dorland's* at 628. The sclera is the "tough white outer coat of the eyeball." *Id.* at 1651.

[9] Keratitis is an "inflammation of the cornea." *Dorland's* at 967.

in severe pain. (*Id*.) She denied "visual changes, foreign body sensation or discharge." (*Id*.) Dr. Milizia diagnosed her with possible episcleritis of the right eye and prescribed her oral steroids and artificial tears. (R. 393.) She was told to stop using topical steroids and was referred to ophthalmology for further evaluation. (*Id.*)

On December 14, 2021, Plaintiff saw Dr. Mor for a follow-up appointment. (R. 395.) Plaintiff complained of right eye pain and blurred vision. (*Id.*) She reported that she had stopped using her previously prescribed prednisolone and tobramycin-dexamethasone ointment but was using Visine eye drops to treat the redness. (*Id*.) This time, her eye exam revealed 20/30 vision in her left eye and 20/150 vision in her right eye. (R. 396.) Slit Lamp and Fundus exam results were normal. (*Id*.) Dr. Mor assessed stromal keratitis, probably caused by a virus, in her right eye. (R. 396-97.) She was prescribed cyclopentolate drops and Valtrex and given a new prescription for prednisolone acetate. (R. 397.) Dr. Mor also recommended a follow-up corneal exam. (*Id*.)

On May 5, 2022, Plaintiff was referred by the Division of Disability Determination to ophthalmologist Dr. Shrikant Bhamre for a consultative examination. (R. 412.) Dr. Bhamre noted that Plaintiff had been complaining of blurred vision and light sensitivity (photophobia), chiefly in her right eye, since 2015. (*Id*.) Plaintiff reported to Dr. Bhamre that she frequently bumped into people and objects and could not drive because of her vision problems. (*Id.*) Plaintiff referenced an unknown eye problem and reported she had been given prednisolone eye drops. (*Id*.) Dr. Bhamre reported 20/30 vision in both Plaintiff's left and right eyes and recorded that she does not use eyeglasses for distance. (*Id*.) Dr. Bhamre was unable to administer certain eye exams due to Plaintiff's pain and irritation, including a tonometry exam, which would require dilation in both eyes, making it difficult for Plaintiff to see even out of her good eye, and a Humphrey visual

field-testing exam, which Plaintiff declined due to eye pain. (R. 413-14.) Dr. Bhamre diagnosed Plaintiff with myopia, possible or probable pellucid marginal degeneration of the right eye, grossly flat retinas with grossly optic nerves through an undilated pupil. (R. 414-15.) Dr. Bhamre also advised urgent follow-up care with an ophthalmologist to monitor and treat Plaintiff's conditions. (R. 415.) The prognosis for Plaintiff's right eye was reported as poor and the prognosis for her left eye was fair to guarded. (*Id.*)

On May 23, 2022, Dr. K. Gallagher, a non-examining state agency medical consultant, reviewed Plaintiff's record. (R. 74.) Dr. Gallagher noted that Plaintiff had experienced blurred vision and light sensitivity since 2015 and was diagnosed with suspected viral-induced stromal keratitis in her right eye. (*Id.*) Dr. Gallagher noted that visual field testing was full in both eyes, and Plaintiff could navigate around and maneuver objects without assistance and had no trouble reading. (*Id.*) Dr. Gallagher also noted that the Humphreys visual field testing was not performed, but because Plaintiff's treating sources stated her vision problem was keratitis, which does not affect the retina, it was reasonable to conclude that Plaintiff was not "STAT blind"[10] and that the visual impairment that affected only her right eye was non-severe. (*Id.*) On August 18, 2022, Dr. R. Abueg, a non-examining state agency medical consultant, reviewed Plaintiff's record upon reconsideration and came to the same conclusion. (R. 84.)

---

[10] This appears to mean that Plaintiff was not statutorily blind. Although not relevant here, the Court notes that for Disability Insurance Benefits claims, "[a] less restrictive rule governs the insured status of individuals who are statutorily blind." *McDonald v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-04558 (RPK), 2024 WL 4625297, at *3 (E.D.N.Y. Oct. 30, 2024) (citing 20 C.F.R. § 404.130(e)).

## IV. The Administrative Hearings

Plaintiff, represented by counsel, first appeared on January 26, 2023 for a hearing before ALJ Iwuamadi. (R. 32-50.) Plaintiff testified that she previously had been self-employed as an eyelash artist but had been unable to find work in her specialty. (R. 38.) She confirmed that she had last worked in that field about a year prior to the hearing, in June 2022. (*Id*.) She had stopped because she had found it difficult to work such a detailed and specific job using only one eye, as her other eye had been constantly irritated. (R. 38-39.) Plaintiff testified that the irritation in her right eye prevented her from driving, made her bump into things and left her very sensitive to light. (R. 39.)

Plaintiff testified that the medical providers she previously had seen had not recommended surgery but had given her prescriptions for steroid eye drops in two different strengths. (R. 40.) According to Plaintiff, these steroid drops helped take away the redness but didn't help with the pain or with her blurry vision. (*Id*.) Plaintiff further reported that her right eye was so blurry she couldn't see from it and had to rely on only her left eye to see sometimes, causing her to bump into people and objects. (*Id.*) She confirmed that the pain had been worsening since 2015, stating, "[i]t feels like somebody stepping on my eyeball 24/7." (R. 45.) Plaintiff testified that she was barely able to leave the house, and that while she could not cook, she could wash dishes. (R. 41.) Plaintiff's mother, who had been living with her, had been helping her with childcare and grocery shopping, although her mother had become sick. (R. 43-44.) Plaintiff also testified that she had difficulty maintaining ongoing care, stating that the clinic she visited kept assigning her to different ophthalmologists, and in some cases never scheduled her follow-up appointments. (R. 45-46.)

Plaintiff, represented by counsel, testified again at a hearing before ALJ Iwuamadi on September 4, 2024. (R. 51-68.) Plaintiff testified that she had an autoimmune disease that affected her vision, and that her symptoms included pain, inflammation and blurriness, making it very hard to see. (R. 57.) Plaintiff described her symptoms as episodic and stated that she treated them with the highest dose of ibuprofen and steroid eye drops. (R. 58.) When her eyes were the most inflamed, Plaintiff stated, "I have to lay down. I'm not even able to see at all." (R. 59.) Plaintiff confirmed that her episodes occurred once or twice a month, and that her symptoms could not be treated simply by wearing glasses. (R. 59-60.) She also confirmed that the episodes could switch from her right to her left eye and back again; they did not always occur in the same eye. (.R. 60.)

ALJ Iwuamadi then questioned Plaintiff about the cost of her treatment: "Have you been unable to receive treatment as a result of shortness of funds?" (R. 60); "[Are] costs [. . .] preventing you from getting treatment? What's going on with your insurance? Is your insurance stopping you from getting certain treatment?" (R. 61). Plaintiff testified that it was not, stating that "I just told you, I don't need surgery. I don't need any treatment. I need ibuprofen – what they're prescribing me now is ibuprofen." (*Id.*) The ALJ pressed Plaintiff on this point, asking again, "[. . . I]s your insurance stopping you, or is money stopping you from getting better treatment and stopping you from going to the doctor more often?" (R. 62.) Plaintiff's attorney also questioned her on this point: "There is no surgery, there is no treatment that has been recommended that you cannot achieve through insurance?" (*Id.*) Plaintiff again responded that there was not. (*Id.*)

Vocational Expert ("VE") Debra Horton also testified at the September 4, 2026 hearing. (R. 63-67.) The ALJ first asked VE Horton to assume a hypothetical individual with the same age and education as Plaintiff and no past relevant work, who was limited to light work, except they could only occasionally climb ramps or stairs; could never climb ladders, ropes or scaffolds; were limited to occasional depth perception and far acuity and were able to wear tinted glasses. (R. 64.) This hypothetical individual never could work at unprotected heights, move or be exposed to mechanical parts, or operate a motor vehicle. (*Id.*) VE Horton testified that, based on those parameters, there were occupations available for such an individual in the national economy, including Marker (Dictionary of Occupational Titles ("DOT") No. 209.587-034), Office Helper (DOT No. 239.567-010) and Cashier II (DOT No. 211.462-010). (*Id.*)

VE Horton confirmed that her testimony was entirely consistent with the DOT, other than her testimony about climbing ramps, stairs, ladders, ropes and scaffolding, which was based on her own education and experience. (R. 64.) She also testified that the requirement to wear dark tinted glasses, which Plaintiff's attorney confirmed the ALJ had included in her hypothetical, would erode the job numbers by 20 percent. (R. 65.) VE Horton also testified that off-task tolerance for these jobs would be less than 10 percent, so that a person missing one day or more per month would not be able to do these jobs. (R. 66.) Moreover, a requirement that a person be able to take unscheduled breaks to lie down during the workday also would preclude Plaintiff from these jobs. (*Id.*) Finally, VE Horton distinguished between glasses with light tints, with which the Plaintiff would still be able to do all three cited jobs, and glasses with tints "dark enough that you cannot see the person's eyes," which would count as an accommodation. (R. 66.)

## V. <u>ALJ Iwuamadi's November 21, 2024 Decision</u>

In a decision dated November 21, 2024, applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards, at step one, ALJ Iwuamadi noted that, although Plaintiff appeared to have post-onset date earnings from 2022 and 2023, Plaintiff claimed that the earnings were not hers, and that she had filed a claim with the Internal Revenue Service regarding these mistaken earnings. (R. 22). Although proof of the claim had not yet been furnished, ALJ Iwuamadi gave Plaintiff the benefit of the doubt and proceeded to step two. (*Id.*) At step two, the ALJ found that Plaintiff had severe impairments of myopia, right stromal keratitis and episcleritis. (*Id.*)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye) and 2.04 (loss of visual efficiency, or visual impairment, in the better eye). (R. 22.)

Prior to proceeding to step four, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform a reduced range of light work, as defined in 20 C.F.R. § 416.967(b), except that she could climb ramps and stairs occasionally; could never climb ladders, ropes or scaffolds; could occasionally perform activities requiring depth perception and far acuity; she required the ability to wear slightly tinted glasses; she could never work at unprotected heights or be exposed to moving mechanical parts, and could not operate a motor vehicle. (R. 22-23.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 25.) At step five, the ALJ considered Plaintiff's age, education, work experience and RFC and concluded, based on

VE Horton's testimony, that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including Marker, Office Helper and Cashier II. (R. 26.) Therefore, the ALJ found that Plaintiff was not under a disability, as defined under the Act, since December 6, 2021, the date that Plaintiff filed her application.[11] (*Id.*)

## LEGAL STANDARDS

### I. Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*, No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010)).

[11] Earlier in her decision, the ALJ noted that, although SSI is not payable prior to the month following the month in which the application was filed (R. 20 (citing 20 C.F.R. § 416.335)), she considered Plaintiff's complete medical history consistent with 20 C.F.R. § 416.912. (*Id.*)

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 447-48 (cleaned up). "But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448 (quoting *See Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original).

**II. <u>Determination Of Disability</u>**

A person is considered disabled for benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920(a)(4) (internal citations omitted).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. § 416.920(a)(4). After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 416.920(e). A claimant's

RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

The claimant bears the burden of proof as to the first four steps. *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that he cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education, and past relevant work experience. *See id.* at 51-52.

**DISCUSSION**

Plaintiff makes two arguments in support of her motion for remand. (*See* Pl.'s Mot. at 5-10.) First, Plaintiff argues that the ALJ failed to fully and fairly develop the record regarding her RFC. (Pl.'s Mot. at 5-7.) Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective statements. (*Id.* at 7-10.) In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and that Plaintiff's arguments are without merit. (*See* Comm'r Br. at 1, 5-9.) The Court considers each of Plaintiff's arguments, in turn.

**I. The ALJ Did Not Err By Failing To Further Develop The Record**

Plaintiff argues that the ALJ did not cite to any specific medical evidence or persuasive non-medical evidence that supports Plaintiff's visual limitations and, thus, her findings lacked medical foundation. (Pl.'s Mot. at 5-6.) Accordingly, Plaintiff argues that the ALJ had a duty to develop the record by requesting further medical evidence, in the form of either additional medical records, including an updated consultative examination, or medical testimony at the hearing. (*Id*. at 6-7.) Plaintiff asserts that the ALJ's RFC determination otherwise is "based on

nothing more that her impermissible lay judgment of the evidence." (*Id.* at 7; *see also* Pl.'s Reply, ECF No. 15, at 1-2.)

An "ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alteration in original) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* at 112-13 (cleaned up). "However, the duty to develop the record is not absolute, and requires the ALJ only to ensure that the record contains sufficient evidence to make a determination." *Tanya R. v. Comm'r of Soc. Sec.*, No. 24-CV-09076 (SDA), 2026 WL 791256, at *19 (S.D.N.Y. Mar. 22, 2026) (cleaned up).

"The record contains sufficient evidence if it is 'robust enough to enable a meaningful assessment of the particular conditions on which the petitioner claims disability.'" *Id.* (quoting *Sanchez v. Colvin*, No. 13-CV-06303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015)). "When an ALJ's RFC determination is questioned by a claimant, a reviewing court's 'decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity.'" *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 584 (S.D.N.Y. 2022) (quoting *Newton v. Berryhill*, No. 18-CV-01244 (MPS), 2019 WL 4686594, at *2 (D. Conn. Sept. 26, 2019)). Thus, "[a]n ALJ's determination may be upheld where the record is 'adequate to permit an informed finding.'" *Tanya R.*, 2026 WL 791256, at *19 (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). Relatedly, "[o]btaining testimony from a medical expert is discretionary" and an ALJ is not required to obtain medical expert testimony

when there are no gaps in the record. See *Starr v. Comm'r of Soc. Sec. Admin.*, 581 F. Supp. 3d 525, 534 (S.D.N.Y. 2022) ("ALJ was capable of adjudicating [plaintiff's] claim based on the existing record and thus she did not breach her duty to develop the record by declining to obtain testimony from a medical expert."); *see also Soltis v. Berryhill*, No. 18-CV-00490 (HBP), 2019 WL 1324415, at *21 (S.D.N.Y. Mar. 25, 2019) (citing cases).

In the present case, the Court finds that there is no obvious gap in the record and the record was "complete and detailed enough to allow the ALJ to determine [Plaintiff's] residual functional capacity." *See Blachorsky v. O'Malley*, No. 23-CV-07401 (VF), 2024 WL 4144040, at *7 (S.D.N.Y. Sept. 11, 2024); *see also Joel F. v. Comm'r of Soc. Sec.*, No. 20-CV-00904 (GTS) (DEP), 2021 WL 6503576, at *9 (N.D.N.Y. Nov. 9, 2021), r*eport and recommendation adopted*, 2022 WL 160304 (N.D.N.Y. Jan. 18, 2022) (ALJ properly exercised discretion when no indication that medical expert testimony was warranted to complete record). As the Commissioner explains, the ALJ's decision reflects a comprehensive review of Plaintiff's medical treatment history with respect to her visual impairments. (Comm'r Br. at 5.) To the extent the medical evidence is thin, that is not due to a failure to gather relevant records, but due to the fact that Plaintiff received limited treatment during the relevant time period. (*See* R. 24 (noting that Plaintiff had not had any treatment since December 2021 and that the record had been kept open for additional records but none were received). Moreover, the record contained the opinions from the state agency consultants, each of whom reviewed all of the available evidence of Plaintiff's visual impairments, as well as a complete eye exam performed by consultative examiner Dr. Bhamre. (R. 74-84, 412-15.) The ALJ also properly relied on Plaintiff's testimony in crafting the RFC. *See Chad D. v. Bisignano*, No. 24-CV-01343 (DJS), 2026 WL 587680, at *3 (N.D.N.Y. Mar. 3, 2026).

Plaintiff primarily leans on the fact that the ALJ was "not persuaded" by medical opinions in the record to argue that she committed "reversible error" by "relying on her own lay judgment regarding Plaintiff's . . . limitations from her eye impairments." (Pl.'s Reply at 1.) In the November 21, 2024 decision, the ALJ found that the state agency opinions that Plaintiff did not have a severe visual impairment were not persuasive, given evidence that Plaintiff sought ongoing treatment to address right eye symptoms and examinations reflected vision deficits. (R. 25.) Substantial evidence supports the ALJ's decision to impose greater restrictions than set forth in the medical opinions.[12] *See Crystal Joy L. v. Comm'r of Soc. Sec.,* No. 24-CV-07788 (GRJ), 2026 WL 111947, at *4 (S.D.N.Y. Jan. 14, 2026) (RFC assessment, to extent not consistent with medical opinions, supported by substantial evidence when ALJ imposed greater limitations than opined by examining physicians) (citing *Baker o/b/o Baker v. Berryhill*, No. 15-CV-00943 (MAT), 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.") (emphasis in original) (collecting cases)); *see also Chad D.,* 2026 WL 587680, at *3 (substantial evidence support ALJ's decision to impose greater limits than opined in medical opinions based upon the plaintiff's documented vision issues and the plaintiff's own testimony regarding his limited visual acuity).

[12] In contrast, in the cases cited by Plaintiff (Pl.'s Mot. at 6), there were no medical opinions to support the relevant RFC determinations. *See, e.g., Figueroa v. Comm'r of Soc. Sec.*, No. 20-CV-02700 (KAM), 2021 WL 4295313, at *10 (E.D.N.Y. Sept. 21, 2021) (ALJ's conclusion that plaintiff could perform sedentary work not supported by substantial evidence when no medical opinion in the record indicating plaintiff was able to sit for the required six hours in an eight-hour workday); *Rivera v. Comm'r of Soc. Sec.*, No. 15-CV-08439 (GBD) (HBP), 2017 WL 120974, at *13 (S.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 946296 (S.D.N.Y. Mar. 9, 2017) (remand required when there was "no evidence in the record affirmatively demonstrating that plaintiff was able to perform sedentary work").

As for Dr. Bhamre's consultative examination, the ALJ did not address its persuasiveness in her November 21, 2024 decision.[13] (R. 25.) However, in explaining her RFC determination, the ALJ cited Dr. Bhamre's examination results and relied on Dr. Bhamre's findings that Plaintiff was able to maneuver objects without assistance, navigate without assistance and read without difficulty.[14] (R. 24-25.) Thus, rather than relying on her own lay judgment, the ALJ based her RFC assessment on medical evidence in the record. *See Crystal Joy L.*, 2026 WL 111947, at *4 ("The ALJ provided a detailed discussion of the treatment record and Plaintiff's activities of daily living, which supported the conclusion that Plaintiff's visual impairment did not preclude her from performing a range of work.").

## II. <u>The ALJ Properly Evaluated Plaintiff's Subjective Statements</u>

Plaintiff next argues that the ALJ's evaluation of her subjective statements is not supported by substantial evidence. (Pl.'s Mot. at 9.) In particular, Plaintiff asserts that the ALJ failed to consider the factors required by SSR 16-3p[15] before making a conclusion regarding the

---

[13] The Court notes that Plaintiff cites to the ALJ's earlier decision from May 22, 2023 that she was not persuaded by "the above opinions[,]" which Plaintiff appears to read as including the opinion of Dr. Bhamre. (*See* Pl.'s Reply at 2 (citing R. 96).) The Court reads that statement as pertaining only to the opinions of the agency consultants identified in the preceding paragraph, which also is consistent with the November 21, 2024 decision.

[14] Although an ALJ commits procedural error by failing to explain how she considered the supportability and consistency of medical opinions in the record, *see Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022), a reviewing court still may affirm if "a searching review of the record" assures it "that the substance of the [regulation] was not traversed." *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)). Thus, to the extent Dr. Bhamre's findings constitute opinions for which a persuasiveness discussion was required, the Court finds any error was harmless as the Court can glean the ALJ's rationale in her discussion of Dr. Bhamre's examination.

[15] These factors include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain

validity of her testimony, including by failing to properly address the explicit instructions of the Appeals Council that the ALJ investigate whether Plaintiff's conservative and limited treatment had been due to issues of cost or lack of improvement. (*Id*. at 9-10.)

"A claimant's subjective complaints of pain and limitation are 'an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant.'" *Diana G. v. Commissioner*, No. 25-CV-05202 (GRJ), 2026 WL 3231624, at *3 (S.D.N.Y. Oct. 28, 2026) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010)); *see also* 20 C.F.R. § 416.929. However, an ALJ is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted).

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit a plaintiff's ability to do work. *See id.*

---

or other symptoms [. . .]; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p(d).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 183.[16] "Where findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Jenna-Rose B. v. Comm'r of Soc. Sec.*, 25-CV-03017 (GS), 2026 WL 2937873, at *11 (S.D.N.Y. Sept. 30, 2026) (cleaned up).

The ALJ followed the two-step process set forth in the regulations. The ALJ discussed Plaintiff's testimony and explained that she found "the objective medical evidence and the administrative record as a whole do not support the claimant's statements regarding disability." (R. 24.) In addition to the lack of treatment since December 2021, the ALJ considered Plaintiff's statements in light of the entire record. The ALJ found Plaintiff's testimony that prescription glasses didn't help her read to be inconsistent with Dr. Bhamre's consultative examination finding that she could read without difficulty. (R. 24.) The ALJ also found Plaintiff's testimony regarding limited activities of daily living to be inconsistent with that finding and Dr. Bhamre's findings that she could maneuver objects without assistance and navigate without assistance. (R. 24-25.) Thus, contrary to Plaintiff's argument, the ALJ did not simply rely on a lack of treatment in discounting Plaintiff's testimony. (*See* Pl.'s Mot. at 10.) Nor did the ALJ improperly ignore Plaintiff's testimony suggesting that treatment would not improve her conditions. (*See id.*) Rather, the ALJ evaluated Plaintiff's subjective complaints in light of the broader evidence in the record and reasonably

---

[16] This inquiry involves seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii)); *see also* SSR 16-3p.

determined that, despite her subjective statements, Plaintiff could perform light work with additional limitations. (R. 23-25.) Because the ALJ identified specific record-based reasons for her ruling, the Court finds no reason to second-guess her credibility finding. *See Castillo v. O'Malley*, 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024).

The Court also agrees with the Commissioner that the ALJ fully complied with the Appeals Council directive, and SSR 16-3p,[17] to question Plaintiff about cost as a barrier to treatment. (Comm'r Br. at 9-10 (citing R. 61-62).) Specifically, when Plaintiff was asked if her neglect in pursuing treatment was due to affordability, Plaintiff answered in the negative. (R. 62 ("ALJ: . . . [I]s your insurance stopping you, or is money stopping you from getting better treatment and stopping you from going to the doctor more often? CLMT: No, it is not.").) For these reasons, the Court finds that the ALJ's evaluation of Plaintiff's subjective statements is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's motion (ECF No. 12) is DENIED, and the Commissioner's decision is AFFIRMED. The Clerk of Court is respectfully requested to close this case.

Dated: New York, New York
November 10, 2026

Stewart d. Aaron

STEWART D. AARON
United States Magistrate Judge

[17] SSR 16-3p explains that the SSA "will consider and address reasons for not pursuing treatment that are pertinent to an individual case," and lists non-exhaustive examples of possible reasons a claimant may not have pursued treatment. SSR 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *9-10 (Oct. 25, 2017).